IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

JAMELL CARMONA

    PLAINTIFF

    vs

THE CITY OF NEW YORK, a municipal
entity,  NEW YORK CITY POLICE
OFFICER RICHARD D. BROWNE, Shield
# 352, in his individual and official capacities,
NEW YORK CITY POLICE OFFICER
FRANCIS TORRES, in his individual and
official capacities, NEW YORK CITY
POLICE OFFICER-SERGEANT MICHAEL
DICECCO, in his individual and former official
capacities, DETECTIVE FRANK MUZIKAR,
in his individual and official capacities,
NEW YORK CITY POLICE OFFICER-
LIEUTENANT  MATTHEW HARRISON, in
his individual and official capacities,
NEW YORK CITY POLICE OFFICERS
"JOHN DOES", each in his/her individual and
official capacities,

    DEFENDANTS

*CIVIL No 20- 04040 (LDH) (VMS)*
*SECOND AMENDEDCOMPLAINT*
(AS OF RIGHT PURSUANT TO
*THE COURT'S INITIAL*
*SCHEDULING CONFERENCE*
*AND ORDER AND THE*
*COURT'S AMENDMENT OF*
*SUCH – 12/10/20 DOCKET*
*ENTRIES; DOC. # 27; AND*
*03/12/21 DOCKET ENTRY*)

*JURY TRIAL REQUESTED*

## I. INTRODUCTION

1. This is a litigation which arises out of an event which occurred on April 11, 2018,

2. On that date and at the location hereinafter described, the Plaintiff was stopped by two New York City police officers (believed to be party Defendants Browne and Musikar) while the Plaintiff was driving his vehicle; he was  approached; he was removed from his vehicle; he was detained;  and  he was  arrested by the party Defendant who, individually and collectively, were acting in the course of their duties and functions as New York City police officers and who were acting collectively together and in

concert with each other; this notwithstanding g that there was no objectively reasonable basis for the Plaintiff's stop, detention, and arrest.

3. The Plaintiff 's vehicle was searched and the Plaintiff was subjected to a strip-intrusive body search at the location where he was stopped, detained, and arrested by the identified  individual party Defendants Browne and Muzikar who, individually and collectively and in concert with each other, were acting in the course of their duties and functions as New York City police officers; this notwithstanding there was no objectively reasonable basis for search of the Plaintiff's vehicle and for the strip-intrusive roadside search of the Plaintiff  by the  individual identified party Defendants Browne and Muzikar.

4.  The Plaintiff was transported to the 120th Precinct where he was subjected once again to a further strip-intrusive search of his person and  charged with marijuana possession related charges by the identified party Defendants Browne and Muskier, each individually and each collectively together and in concert with each other and with the approval and authorization and acquiescence of identified party Defendants Sergeant DiCecco  and/or Lieutenant Harrison; this notwithstanding that there was no basis for the strip-intrusive search of the Plaintiff's person and the charges and those charges were, upon a Motion to Dismiss, eventually dismissed by the Richmond County Criminal Court on June 6, 2019 after the Plaintiff was required to make several appearance in the Richmond County Criminal Court before the charges were dismissed and the documents associated with the Plaintiff's arrest and prosecution were sealed.

5.  This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States.

6.  The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief (if appropriate), as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

## II. JURISDICTION

7.  Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

8.  The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is required to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

9.  This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States.

## III. THE PARTIES

10. The Plaintiff is a Black American citizen of Hispanic national origin.

11. At the time of the events hereinafter described, the Plaintiff was a resident of the State of New York, the City of New York, and the County of Richmond.

12. The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose among others of protecting the welfare of those who reside in the City of New York.

13.   Defendants "John Does", Richard Browne, Shield # 352, Francis Torres,  Frank Muzikar, Matthew Harrison, and Michael DiCecco are and/or were at the time of the events giving rise to the litigation New York City line and/or command police officers and agents and employees of the City of New York.  Although their actions and conduct hereinafter described were unlawful and wrongful and violated  the Plaintiff's rights as guaranteed under the laws and Constitution of the United States, the actions were taken in and during the course of their duties and functions as New York City line and command police officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City police officers and agents and employees of the City of New York.  Each is sued in his individual and in his official or former official capacities.  Each of the individually named party Defendants acted individually and each collectively and in concert with each other and each with personal and/or collective knowledge of all of the aspects of the incident which gives rise to the litigation as the incident is hereinafter described.

## IV. ALLEGATIONS

14.   The Plaintiff is a Black American citizen of Hispanic national origin.

15.   At the time of the incident hereinafter described, the Plaintiff resided in the City of New York, the County of Richmond, and the State of New York.

16.   The Plaintiff's birth date is March 25, 1987.

17.   On April 11, 2018, the Plaintiff was thirty one (31) years of age.

18.   On April 11, 2018, the Plaintiff was employed as a construction worker; and he had been so employed for approximately five (5) years.

19.   On April 11, 2018, the Plaintiff was undertaking to start his own painting business.

20. On April 11, 2018, the Plaintiff was registered for classes at the City University of New York, College of Staten Island.

21. The event out of which this litigation arises commenced on April 11, 2018 at or about 2:00 P.M. in the vicinity of 25 Hyatt Street, Staten Island, New York.

22. On April 11, 2018, the Plaintiff went to the office of the Empire Bail Bonds entity which is located at 25 Hyatt Street-# 200, Staten Island, New York 10301.

23. The Plaintiff went to the entity at the location for the purposes of providing a weekly check-in at that entity.

24. At the time, the Plaintiff was on bail for a matter then pending in the Richmond County Criminal Court; and, as a condition of the posting of the bail by the Empire Bail Bonds entity, the Plaintiff was required to check in with the entity on a weekly basis.

25. The Plaintiff arrived at the afore-described location in his automobile.

26. The Plaintiff parked his vehicle.

27. The Plaintiff exited his vehicle.

28. The Plaintiff observed two individuals, whom the Plaintiff believes were party Defendants New York City police officers Browne and Muzikar, sitting in a vehicle that was proximate to the location where the Plaintiff had parked his vehicle and exited his vehicle.

29. The Plaintiff entered the building and went to the offices of the Empire Bail Bonds and he reported as he was required to do.

30. The Plaintiff was in the Empire Bail Bonds entity offices for perhaps one half hour, maybe somewhat longer but less than one hour.

31.   Thereafter, the Plaintiff exited the  offices of the Empire Bail Bonds entity and the building in which the offices were situated; he returned to where his vehicle was then parked; and entered into his vehicle to depart from the location.

32.   As he went to his vehicle and entered into such, the Plaintiff once again observed the two individuals who were sitting in a vehicle and whom the Plaintiff had observed when he had first arrived at the location and he had parked his vehicle.

33.   When the Plaintiff returned to his vehicle, he observed the two individual watching him.

34.   The Plaintiff started his vehicle and began to leave the location where he had parked his vehicle.

35.   As he pulled away, the Plaintiff observed the vehicle with the two individuals make a u-turn and, then, take action to pull the Plaintiff over in the vicinity of the corner of Van Duzer and Hannah Streets which is not distant from the Hyatt Street location.

36.   The Plaintiff complied with the action by the two individuals to pull the Plaintiff over.

37.   The vehicle in which the two individuals were situated was an unmarked vehicle; and the individuals in that vehicle, both of whom were males, were in plain clothes.

38.   Given what he had previously observed and what had transpired, Plaintiff believed that the two individuals were plain clothes New York City police officers.

39.   The two male individuals, whom the Plaintiff believes were party Defendant New York City police officers Browne and Muzikar, approached the Plaintiff's vehicle and informed the Plaintiff that the Plaintiff had failed to use a proper signal when he had exited the location where he had previously parked his vehicle.

40. Such was not true.

41. The Plaintiff was asked by the party Defendant New York City police officers to provide them with his license, registration, and insurance documents.

42. The Plaintiff undertook to do so.

43. However, the party Defendant New York City police officers did not take the Plaintiff's paperwork.

44. Instead, the party Defendant New York City police officers directed the Plaintiff to exit his vehicle.

45. The Plaintiff stepped out of his vehicle.

46. The party Defendant New York City police officers searched the Plaintiff's vehicle.

47. The party Defendant New York City police officers' searched the Plaintiff.

48. In searching the Plaintiff, the party Defendant New York City police officers pulled the Plaintiff's pants down exposing the Plaintiff's buttocks.

49. The party Defendant New York City police officers searched inside of the Plaintiff's pants and the Plaintiff's underwear.

50. The party Defendant New York City police officers did not find any contraband (either substances or weapons) on the Plaintiff's body.

51. The party Defendant New York City police officers did not find any contraband on the Plaintiff's body as the Plaintiff was not carrying any contraband on his body or in his possession.

52. When the Plaintiff was being physically searched outside of his vehicle, people were driving by the location of the intrusive search as described and were observing the strip-intrusive body search as described.

53. While at the back of the unmarked New York City police vehicle, the Plaintiff, who had been handcuffed, asked the party Defendants whether he was being arrested.

54. The party Defendant New York City police officers stated to the Plaintiff that he was not under arrest.

55. The Plaintiff then asked the party Defendant New York City police officers why he had been handcuffed if he was not under arrest.

56. The Plaintiff was placed in the unmarked New York City Police Department  vehicle; and, while the Plaintiff was in the vehicle, the party Defendant New York City police officers continued to search the Plaintiff's vehicle.

57. Thereafter and while the Plaintiff was in the New York City Police Department vehicle, the Plaintiff was informed that the party Defendant New York City police officers were taking the Plaintiff in because they had found "weed" in the Plaintiff's vehicle.

58. The Plaintiff denied that there was any "weed" in his vehicle.

59. The Plaintiff said to the party Defendant New York City police officers that there was no "weed" in the vehicle; that he had just come from the bail bondsman.

60. The latter-that the Plaintiff had just come from the offices of the bail bondsman- is something that  the party Defendant New York City police officers knew since they  had been watching the location of the bail bondsman when the Plaintiff had arrived at the location and thereafter until he left that location.

61.  The Plaintiff's vehicle was left at the location where the Plaintiff was stopped by the party Defendant New York City police officers.

62.  Moreover, the Plaintiff's vehicle registration documents, which the party Defendant New York City police officers had previously asked for but which they did not take, were left in the Plaintiff's vehicle although the keys to the Plaintiff's vehicle were apparently taken by the party Defendant New York City police officers as they were among the items in the Plaintiff's property when the Plaintiff was released from his custodial detention at the Precinct to which the Plaintiff was transported and the Plaintiff's property, which had been taken from the Plaintiff, was then returned to him.

63.  The Plaintiff was transported to the New York City Police Department's 120th Precinct facility.

64.  Plaintiff believes that party Defendant then New York City police officer Frank Muzikar and party Defendant Browne acted together and in concert with each other when they stopped, detained, and arrested the Plaintiff and transported him to the 120th Precinct for his post arrest processing as an arrestee.

65.  Plaintiff believes that party Defendant then New York City police officer Frank Muzikar and party Defendant Browne acted together and in concert with each other when and while the Plaintiff's vehicle was searched at the location of the road-side stop; and when and while the Plaintiff was subjected to a strip- intrusive road-side search.

66.  After the Plaintiff arrived at the 120th Precinct, he was subjected to a further strip-intrusive search of his person that exposed his buttocks area.

67.  The strip-intrusive Precinct search was conducted by party Defendants Browne and Muzikar, who were acting in concert with each other, in the presence of a female

New York City police officer; and it is believed that the arrest and the strip- intrusive

Precinct search was conducted with the knowledge and approval and authorization of

Defendants DiCecco and/or Harrison who were the on duty Precinct supervisors of party

Defendants Browne and Musikar when they brought the Plaintiff into the 120th Precinct

and when party Defendants Browne and Musikar undertook to process him at the

Precinct as an arrestee in their custody.

68.  As was the case when the Plaintiff was subjected to a strip- intrusive body search

while outside of the New York City Police Department vehicle at the location of the

Plaintiff's road-side stop, detention, and arrest, nothing was found to be in the possession

of the Plaintiff's person because the Plaintiff did not have any contraband (marijuana or

otherwise) on his person as was the case when he was subjected to the road-side location

when and where the Plaintiff was subjected to a strip-intrusive search of his person; this

notwithstanding that the party Defendants Browne and Musikar  claimed and reported to

their supervisors DiCecco and/or Harrison and other New York City Police Department

employees and eventually to the Richmond County District Attorney that they had

recovered and seized marijuana from the Plaintiff as a consequence of their Precinct

location strip-intrusive search of the Plaintiff's person.

69.  The strip-intrusive search of the Plaintiff at the Precinct and in the presence of a

female New York City police officer was undertaken to harass the Plaintiff as the party

Defendant New York City police officers knew that the Plaintiff had no contraband on

his body as a consequence of the strip-intrusive body search that the party Defendant

New York City police officers had previously subjected the Plaintiff to; and as the party

Defendant New York City police officers knew that it was improper to subject the

Plaintiff to a strip- intrusive body search in the presence of a female New York City police officer.

70. The Plaintiff was subjected to a finger-printing process.

71. The Plaintiff was placed in a holding cell.

72. After being detained in the holding cell for some period of time, the Plaintiff was informed that he would be receiving a Desk Appearance Ticket (DAT) allowing him to be released from his custodial detention at the Precinct, in lieu of being held in custody until he was presented to the Richmond County Criminal Court at an arraignment.

73. After several hours, the Plaintiff was, with the approval of party Defendants supervisors DiCecco and/or Harrison, issued a Desk Appearance Ticket.

74. The Desk Appearance Ticket required the Plaintiff to appear in the Richmond County Criminal Court on a date certain and under penalty of law for failure to appear on the assigned date, the failure of which could result in the issuance of a warrant by the Court to be taken into custody and returned to the Court for his arraignment at that time.

75. Per the requirements of the Desk Appearance Ticket which the Plaintiff received on April 11, 2018, the Plaintiff did appear at the Richmond County Criminal Court on the assigned date for his arraignment on the marijuana related charges which had been preferred against him as a consequence of the information provided by the party Defendant New York City police officers under penalty of law for making false statements.

76. At the Plaintiff's arraignment, the Plaintiff entered a plea of not guilty.

77. He entered a plea of not guilty because he was not guilty of the conduct which the party Defendant New York City police officers described as the basis for their stop,

detention, and arrest of the Plaintiff including as party Defendants Browne and Musikar

falsely described, with the approval and knowledge and acquiescence of party Defendants

DiCecco and/or Harrison, that they had recovered marijuana from the Plaintiff's vehicle

and his person, that they knew such to be marijuana, and that Plaintiff had acknowledged

that which was recovered from his vehicle was weed.

78.  The party Defendant New York City police officers, acting together and in concert

with each other, stated under penalty of law that they had stopped and detained the

Plaintiff because the Plaintiff had failed to properly signal while driving his vehicle

causing them to make stop for a vehicular offense; and they conveyed such to the

Richmond County District Attorney's Office and to the Court in which the charges were

presented and the Plaintiff was required to appear on several occasions before the charges

were dismissed by the Court.

79.  Such was not true because the Plaintiff did not fail to signal while driving his

vehicle.

80.  The reason given by the party Defendants for the stop and detention of the

Plaintiff –that while driving his vehicle the Plaintiff failed to signal- was false and was a

pretext for stopping the Plaintiff who had been observed by the party Defendant police

officers over a period of time when he arrived at a Hyatt Street location in his vehicle,

parked his vehicle in the vicinity of the New York City police officer party Defendants'

vehicle, exited his vehicle and entered into the offices of the Empire Bail Bonds,

thereafter  exited those offices and returned to his vehicle and left the location followed

by the party Defendant New York City police officers in their unmarked New York City

Police Department vehicle before they then stopped and detained the Plaintiff.

81. The party Defendant New York City police officers, acting in concert with each other and with the personal and/or collective knowledge of each other, stated under penalty of law that, during the course of the stop and detention of the Plaintiff, they observed in plain view one lit marijuana cigarette in the driver's-side door panel of the Plaintiff's vehicle and that the Plaintiff stated to the party Defendants that it was "weed"; and the false information was conveyed to the Richmond County District Attorney upon which the Richmond County District Attorney pursued a criminal prosecution against the Plaintiff.

82. The information and evidence which was conveyed by the party Defendant New York City police officers, who were acting in concert with each other, was not true and was fabricated because there was no marijuana in the Plaintiff's vehicle and the Plaintiff never stated to the party Defendants at the road side or otherwise that "it's weed.".

83. Moreover, the information and the evidence which was conveyed by the party Defendant New York City police officers, who were acting in concert with each other, was not true and was fabricated because there was no lit marijuana cigarette in the driver's-side door panel of the Plaintiff's vehicle.

84. The party Defendant New York City police officers, who were acting in concert with each other, stated under penalty of law that, during the course of the search of Plaintiff's person associated with the arrest processing of the Plaintiff at the Precinct, they found one twist bag of marijuana in the waist-line of the Plaintiff's pants.

85. Such was not true and was fabricated because the Plaintiff did not have any marijuana in his personal possession including in the waist-line of his pants.

86. The party Defendant New York City police officers, who were acting in concert with each other, falsely stated under penalty of law that the marijuana which they asserted was in the Plaintiff's vehicle and in the waist-band of his pants, was field tested positive.

87. All of the above described false information and evidence was provided by party Defendants Browne and Musikar to party Defendants DiCecco and/or Harrison and to other New York City Police Department personnel and eventually and ultimately to the Richmond County District Attorney's office as the basis for the issuance of the Desk Appearance Ticket by the party Defendant New York City police officers and for the stop and detention and custodial arrest of Plaintiff; and, thereafter, for the marijuana possession related offenses preferred against the Plaintiff.

88. It is believed that the Desk Appearance Ticket which was issued by the party Defendant New York City police officers, who were acting in concert with each other, was approved by party Defendant New York City police officer-Sergeant Michael DiCecco this notwithstanding that he knew or should have known that the evidence and information on which the party Defendant New York City police officers stopped and detained the Plaintiff and on which they claimed that the Plaintiff possessed marijuana in his vehicle and on his person were not true and accurate and were fabricated by party Defendants Browne and Musikar; and notwithstanding that party Defendant New York City Police Department Sergeant DiCecco did not undertake any reasonable efforts to test the truthfulness and accuracy of what the party Defendant New York City police officers Browne and Musikar, acting in concert with each other, informed him were the facts of the stop, detention, and arrest of the Plaintiff (and the search of the Plaintiff's vehicle and

the strip-intrusive searches of the Plaintiff's person at the road-side and then again in the
120th Precinct)

89.  It is believed that the command personnel at the New York City Police
Department's 120th Precinct facility including party Defendants New York City Police
Department Sergeant Michael DiCecco and New York City Police Department
Lieutenant Harrison  were aware that, as a matter practice of the police officer work force
at the 120th Precinct, New York City, police officers assigned to the 120th Precinct
planted marijuana to justify the arrests and otherwise provided fabricated false evidence
and information as a justification for the stop, detention, and arrest of individuals for
marijuana possession related offenses.

90.  Notwithstanding such, the command structure at the 120th Precinct tolerated and
sanctioned such propelling the party Defendant New York City police officers to believe
that they could provide false information to the command structure related to and as the
basis for marijuana possession related arrests without suffering any consequences for
doing the same because the command structure personnel, among them party Defendants
New York City Police Department Sergeant DiCecco and Lieutenant Harrison, would not
test the truthfulness of the information provided by the officers.

91.  Furthermore, it is believed that the command structure of the New York City
Police Department including the Executive office of the New York City Police
Commissioner were aware of the afore-described condition and practice at the 120th
Precinct facility on Staten Island, New York; and, yet, the Police Commissioner and his
executive staff  did little if anything to address the condition and practice as described
thereby causing the party Defendant New York City police officers and the command

15

structure at the 120th Precinct facility on Staten Island including party Defendants New York City police officer-Sergeant DiCecco and Lieutenant Harrison, to believe that they could act as they did in this matter with suffering any adverse consequence for their unlawful conduct.

92. Subsequent to the Plaintiff's initial appearance before the Court pursuant to the mandate set forth in the Desk Appearance Ticket which he received under penalty of law for failure to appear and the Plaintiff's entry of a plea of not guilty on the marijuana possession related charges deriving from the false information and evidence provided under penalty of law by the party Defendant New York City police officers Browne and/or Muzikar and with the knowledge and approval of each other and sanctioned by the party Defendants New York City police officer-Sergeant DiCecco and/or New York City police officer- Lieutenant Harrison, the Plaintiff made several appearances in Court culminating, pursuant to a Motion to Dismiss presented to the Richmond County Criminal Court on June 6, 2019, in the dismissal of all the charges preferred against the Plaintiff by order of the Richmond County Criminal Court; and the sealing of the records associated with the dismissal on June 6, 2019.

93. While the actions and conduct of the New York City Police Officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as New York City Police Officers and as agents and employees of the City of New York; and the actions and conduct of each of the party Defendants Browne, Torres, Muzikar, DiCecco, and Harrison, were taken collectively and in concert with each other and with the knowledge (personal and collective) of each other as part of the collective actions and conduct.

94.  The actions and conduct herein described and the policies, practices, protocols and training related thereto violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983).

95.  The Plaintiff suffered injuries and damages including anxiety, mental distress, emotional anguish, and psychological trauma.

96.  The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

97.  The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

## V.  *CAUSES OF ACTION*

### A.  *FIRST CAUSE OF ACTION (FOURTH AMENDMENT RELATED STOP AND DETENTION, FALSE ARREST, VEHILCE SEARCH AND STRIP- INTRUSIVE ROADSIDE AND PRECINCT BASED SEARCHES CLAIMS INCLUDING THE MANNER AND FASHION OF THE SEARCHES)*

98.  The Plaintiff reiterates Paragraph #'s 1 through 97 and incorporates such by reference herein.

99.  There was no objectively reasonable factual justification and basis for the stop of the Plaintiff, the detention of the Plaintiff, the roadside location search of the Plaintiff's vehicle, the roadside location strip-intrusive search of the Plaintiff's person, the strip-intrusive Precinct location search of the Plaintiff's person, and the custodial arrest of the Plaintiff.

100.  The stop, the detention, the roadside location search of the Plaintiff's vehicle, the roadside location and Precinct location strip-intrusive searches of the Plaintiff's person, and the custodial arrest of the Plaintiff by party Defendants Browne and Muzikar and the supervisory approval and authorization and sanctioning of all or some of such by party Defendants DiCecco and Harrison violated the Plaintiff's rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983).

101.  The Plaintiff suffered injuries and damages.

B. *SECOND CAUSE OF ACTION (FOURTEENTH AMENDMENT RELATED INTERFERENCE WITH THE FAIR ADMINISTRATION OF THE CRIMINAL JUSTICE SYSTEM PROCESSES CLAIM)*

102.  The Plaintiff reiterates Paragraph #'s 1-101 and incorporates such by reference herein

103.  The recorded justifications, information, and evidence conveyed by the party Defendant New York City officers Browne and Muzikar, each individually and each collectively together and in concert with each other, and sanctioned by the party Defendant New York City police officer-Sergeant DiCecco and/or Lieutenant Harrison for the stop of the Plaintiff, the detention of the Plaintiff, for the road-side search of the Plaintiff's vehicle, for the roadside location and Precinct location strip-intrusive searches of the Plaintiff's person, and for the custodial arrest of the Plaintiff to the office of the Richmond County District Attorney and to the Court in which the Plaintiff was presented as the basis for the preferral and prosecution of the marijuana possession related charges against the Plaintiff were untrue, false, and fabricated information and evidence.

104.   Such interfered with the Plaintiff's right to the fair administration of New York

State's criminal justice system processes including but not limited to the right to a fair

trial and the right to a fair administration of the New York State criminal justice system

processes.

105.   Such interference with the Plaintiff's right to the fair administration of New York

State's criminal justice system processes including but not limited to the Plaintiff's right

to a fair trial violated the Plaintiff's right to Due Process as guaranteed under the

Fourteenth Amendment to the United States Constitution and the Civil Rights Act of

1871 (42 U.S.C. Section 1983).

106.   The Plaintiff suffered injuries and damages.

### C.  *THIRD CAUSE OF ACTION (FOURTH AMENDMENT RELATED MALICIOUS PROSECUTION CLAIM)*

107.   The Plaintiff reiterates Paragraph #'s 1 through 106 and incorporates such by

reference herein.

108.   The actions of the party Defendants Browne and Muzikar, each individually

and/or each collectively together and in concert with each other, in providing a false

factual narrative and fabricated evidence  as the justification for the stop, detention,

roadside search of the Plaintiff's vehicle, and the roadside location and Precinct location

strip-intrusive searches of the Plaintiff's person and  the custodial arrest and the referral

of marijuana possession related charges and the transmittal of the false and fabricated

factual narrative and evidence to the office of the Richmond County, New York District

Attorney  and to the Court in which the charges were presented and prosecuted and in

which the Plaintiff was required to appear on numerous post arraignment occasions was

intentional and malicious and caused the wrongful and malicious prosecution of the

Plaintiff in violation of his rights as guaranteed under the Fourth Amendment to the

United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983).

109.  The Plaintiff suffered injuries and damages.

### D. *FOURTH CAUSE OF ACTION (FOURTEENTH AMENDMENT MALICIOUS ABUSE OF CRIMINAL PROCESS RELATED CLAIM)*

110.  The Plaintiff reiterates Paragraph #'s 1 through 109 and incorporates such by

reference herein.

111.  The actions of the party Defendants New York City police officers Browne and

Muzikar, each individually and each collectively together and in concert with each other,

and the sanctioning of the same by party Defendants New York City police officer

Sergeant DiCecco and/or Lieutenant Harrison was malicious and intentional and

perverted the legitimate utilization of New York State law enforcement system processes

with the ulterior personal motivation to generate arrests and thereby meet the

expectations of them by the New York City Police Department command structure at the

120th Precinct facility, at the Staten Island, New York City Police Department command

structure, and at the One Police Plaza command structure.

112.  The conduct of party Defendant New York City police officers Browne and

Muzikar, each individually and each collectively together and in concert with each other,

and the approval, authorization, and sanctioning of such by party Defendants New York

City police-Sergeant DiCecco and/or Lieutenant Harrison was a malicious abuse of

criminal process and violated the Plaintiff's rights as guaranteed under the Due Process

Clause of the Fourteenth Amendment to the United States Constitution and the Civil

Rights Act of 1871 (42 U.S.C. Section 1983).

113.  The Plaintiff suffered injuries and damages.

E. *FIFTH CAUSE OF ACTION (FOURTH AND FOURTEENTH RELATED MONELL CLAIMS)*

114. The Plaintiff reiterates Paragraph #'s 1 through 113 and incorporates such by reference herein.

115. The practice by New York City police officers assigned to the 120th Precinct on Staten Island of making up false narratives as the justification for their stop, detention, search (including strip search and /or visual body cavity search), and custodial arrest actions and conduct and the conveying of such to the command structure and tolerated by the command structure at the New York City Police Department's 120th Precinct on Staten Island and by the New York City Police Department command structure at One Police Plaza notwithstanding the knowledge by the One Police Plaza command structure of the practice propelled the conduct of the party Defendant New York City police officers acting in concert with each other and the conduct of party Defendant New York City police officer-Sergeant DiCecco.

116. It is believed that there exists a custom and practice within the New York City Police Department for members of the force to conceal and cover up their own wrongful conduct and the wrongful conduct of which they are aware taken by fellow and sister others; and that the City of New York is aware of that custom and practice and tolerates the same even while professing that the custom and practice does not exist and/or that the City of New York does not tolerate such.

117. It is believed that the custom and practice, sometimes known as the "blue wall of silence" or the "blue code of silence" and the tolerance of such propelled the Defendant officers to act as they did because of a belief that they could do so due to the tolerance and less than vigorous enforcement of the Rules and Regulations of the City of New

York with respect to the reporting requirements by police officers of wrongful conduct on the part of their fellow and sister officers; and specifically in this matter the actions taken by the .Defendants in preferring baseless charges against the Plaintiff and lying about such and manufacturing evidence associated therewith and including subjecting of individuals to unjustified intrusive body searches.

118.    The policies and practices and training of the City of New York related thereto violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983).

119.    The Plaintiff suffered injuries and damages.

F. *SIXTH CAUSE OF ACTION (FOURTEENTH AMENDMENT EQUAL PROTECTION RACE/NATIONAL ORIGIN DISCRIMINATION RELATED CLAIMS)*

120.    The Plaintiff reiterates Paragraph #'s 1 through 119 and incorporates such by reference herein.

121.    The actions, conduct, and practice as described herein disproportionately impact African American and/or Latino citizens and residents of the City of New York and the County of Richmond.

122.    The actions  and conduct, and practices as described violated the Plaintiff's rights as guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and  the Civil Rights Act of 1871 (42 U.S.C. Section 1983).

123.    The Plaintiff suffered injuries and damages.

G. *SEVENTH CAUSE OF ACTION (FOURTH AND FOURTEENTH*
*AMENDMENT REAL PARTY IN INTEREST- RESPONDEAT*
*SUPERIOR RELATED CLAIMS)*

124. The Plaintiff reiterates Paragraph #'s 1 through 123 and incorporates such by reference herein.

125. When the City of New York represents its Officers in federal civil rights litigations alleging unconstitutional actions by its officers (which is almost always the case in 99.99 percent if not more of the situations where an Officer seeks representation), it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

126. It is believed that the Officer-employee executes a retainer indemnification and representation letter which requires the Officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier –the Defendant City of New York.

127. It is believed, moreover, that, when a judgment is obtained against a New York City Police Officers for an Officer's violation of an individual's federally guaranteed Constitutional and civil rights and where the Officer has been represented by the New York City Attorney's Office and where the City of New York has paid the judgment of damages (compensatory and/or punitive damages), the Officer almost never has been subjected to a New York City Police Department disciplinary hearing and/or the imposition of discipline; and it is believed that, when a settlement has been made in such a litigation, the Officer ordinarily is never even informed of such.

128. It is believed, moreover, that when a judgment is obtained against a New York City Police Officer being represented by the New York City's attorney office for the

violation of an individual's constitutional and civil rights, the City of New York takes no action whatsoever to address such and discipline and/or train-retrain the Officer in any form or fashion for his or her unlawful and unconstitutional conduct and/or that the City does not change those policies and practices that propelled said conduct.

129. The City of New York is, under the circumstances, the real party in interest.

130. The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

131. Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken related to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

132. The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers *under the federal claim jurisdiction* pursuant to the doctrine of *respondeat superior*.

133. The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

   [a] Invoke the jurisdiction of this Court.

   [b] Award appropriate compensatory and punitive damages.

   [c] Award appropriate declaratory and injunctive relief.

   [d] Empanel a jury.

   [e] Award attorneys' fees and costs.

   [f] Award such other and further relief as the Court deems is in the interest of justice.

DATED: New York, New York
         April 2, 2021


                    /s/ *James I. Meyerson*
                    JAMES I. MEYERSON
                    510 Fifth Avenue-# 335
                    New York, New York 10036
                    (917) 570-5369
                    jimeyerson@gmail.com

                    /s/ *Jeffrey A. Rothman*
                    JEFFREY A. ROTHMAN
                    305 Broadway-Suite # 100
                    New York, New York 10007
                    (212) 227-2980
                    (212) 591-6343 [FAX]
                    rothman.jeffrey@gmail.com
                    ATTORNEYS FOR PLAINTIFF
                    BY: _____

 Gmail

james meyerson <jimeyerson@gmail.com>

## Activity in Case 1:20-cv-04040-LDH-VMS Carmona v. The City of New York et al Order on Motion for Extension of Time to Amend
1 message

ecf_bounces@nyed.uscourts.gov <ecf_bounces@nyed.uscourts.gov>
To: nobody@nyed.uscourts.gov

Fri, Mar 12, 2021 at 1:59 PM

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Eastern District of New York

#### Notice of Electronic Filing

The following transaction was entered on 3/12/2021 at 1:59 PM EST and filed on 3/12/2021
**Case Name:** Carmona v. The City of New York et al
**Case Number:** 1:20-cv-04040-LDH-VMS
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**Plaintiff has shown good cause to extend the deadline for joinder/amendment. The deadline to join additional parties and amend pleadings is extended from 3/11/2021 to 4/7/2021. Defendant shall make all reasonable efforts to identify the identity of the "Desk Sergeant" by 3/31/2021. Ordered by Magistrate Judge Vera M. Scanlon on 3/12/2021. (Quinlan, Krista)**

**1:20-cv-04040-LDH-VMS Notice has been electronically mailed to:**

James I Meyerson    jimeyerson@gmail.com

Jeffrey Adam Rothman    rothman.jeffrey@gmail.com

Niki Renee Bargueiras    nbarguei@law.nyc.gov

**1:20-cv-04040-LDH-VMS Notice will not be electronically mailed to:**

James I. Meyerson
510 Fifth Avenue- 3rd Floor (#335)
New York, New York 10036
(917) 570-5360
jimeyerson@gmail.com
ATTORNEY AT LAW

March 11, 2021

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
United States Courthouse-Suite # 1214 South
225 Cadman Plaza East
Brooklyn, New York 11202

RE: Jamell v. The City of New York, etc., et al./20 Civ 04040 (LDH) (VMS) (EDNY)

Your Honor:

   Along with Jeffrey Rothman, Esq. we represent Plaintiff Jamell Carmona.  I write this letter
with the consent of Niki Bargueiras, Esq., attorney for the Defendant parties.

   Per your Honor's November 27, 2020 Scheduling Order (_Doc. # 21_), the Court convened the
initial telephone audio recorded conference on December 10, 2020 (_December 10, 2020 Docket_
_Sheet entries_).  Although not memorialized in the Docket Sheet entries, the Court directed that
the joinder of any additional Defendants and any further amendment of the Complaint associated
therewith and otherwise was required to be completed by March 11, 2021; and that paper
discovery processes be commenced by a date certain with the requirement that all discovery
including depositions be completed by June 10, 2021 and that the fact of such be reported to the
Court.

   The Court also directed and memorialized in the December 10, 2019 Scheduling Order
Docket Sheet entry that by March 11, 2021 the parties file a joint status report letter identifying
any outstanding discovery disputes (_December 10, 2020 dated Scheduling Order Docket Sheet_
_entry_).  A telephone conference was scheduled to be held on March 16, 2021 to discuss any
discovery disputes and any proposed expert discovery.

   That telephone conference has been adjourned by Order of this Court to April 19, 2021; and
the parties are required to file a joint status report letter identifying any outstanding discovery
disputes with the Court by April 15, 2021 (_March 1, 2021 dated Re-scheduling Order Docket_
_Sheet entry_).

   The parties have served their respective Discovery Requests and have served their respective
Responses to the same.   They are in the process of identifying discovery disputes and engaged in

efforts to resolve such and/or to narrow any disputes for which Court intervention may be necessary.   Depositions have not yet been scheduled.

A Rule 68 Offer of Judgment was served upon the Plaintiff. It has been rejected. The parties have engaged in some settlement discussions with the exchange of some numbers associated therewith. The parties are far apart but the parties' attorneys have not yet ended the discussions and negotiations.

As part of the discovery process to date, the Defendants have not yet identified the Desk Sergeant at the 120th Precinct who was present when the Plaintiff was searched at the 120th Precinct as part of the post arrest processing to which he was subjected on April 11, 2018.

Accordingly and because the Plaintiff cannot join the Sergeant as a party Defendant by the March 11, 2021 dated required by the Court in its December 10, 2020 audio recorded Order and cannot amend the Complaint in that regard and/or otherwise, Plaintiff requests that the time to join the desk Sergeant and to amend the Complaint be extended from March 11, 2021 to no later than April 7, 2021.

Furthermore and connected with such, Plaintiff's attorneys request that the Defendant's counsel be directed to provide that name by no later than March 31, 2021.     It is imperative that the Desk Sergeant's identity be provided by no later than March 31, 2021 because the three year statute of limitations associated with the commencement of the litigation against him/her as a party Defendant will expire on April 11, 2021.

Given the foregoing and for good cause show and given that there is no prejudice to the party Defendants  and that the Plaintiff's requests will not interfere with the Court's management of the litigation and the schedule that is now in place, the Plaintiff requests that the relief he is seeking (as described) be granted.

Thank you so much for all of your attention and consideration herein

Sincerely yours,
*/s/ James I. Meyerson*
James I. Meyerson
JIM
copy (by ecf):
Niki Bargueiras, Esq.
Jeffrey Rothman, Esq.